CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

4/19/2017

JULIA C. DUDLEY, CLERK
BY: S.Taylor
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| ALFANCO DEXTER BRITTON | ) | Criminal Action No. 5:12cr00014-02 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| UNITED STATES OF AMERICA | ) | By: Michael F. Urbanski |
| Defendant. | ) | United States District Judge |

Alfanco Dexter Britton, a federal inmate initially proceeding pro se, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255. In his pro se petition, Britton alleges counsel provided ineffective assistance by (1) inaccurately advising him that he would fall under the career offender guideline; (2) failing to advise him of the desirability of accepting a plea agreement; (3) failing to seek a competency evaluation; (4) failing to object to imposition of $900.00 in mandatory special assessments; (5) failing to object to the sentencing guidelines enhancement for obstruction of justice; and (6) failing to request a jury instruction on a mere buyer-seller relationship.

Pursuant to Standing Order 2015-5, the Federal Public Defender ("FPD") was appointed to represent Britton on issues arising from the Supreme Court's decision in Johnson v. United States, 135 S. Ct. 2551 (2015)("Johnson II"),[1] concerning the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii). The FPD filed a Supplemental Motion for Relief Pursuant to 28 U.S.C. § 2255 on February 4, 2016, addressing the impact of Johnson II to this case.

On October 14, 2016, the FPD filed a supplemental memorandum in support of Britton's petition, raising additional claims. The supplemental memorandum stated that "the gist of Britton's various complaints of ineffective assistance of counsel involves the failure of his

---

[1] The court designates this decision as Johnson II to distinguish it from the Court's 2010 decision concerning the force clause of the ACCA in Johnson v. United States, 559 U.S. 133 (2010)("Johnson I").

attorney to explain adequately to him the strength of the government's case against him, to accurately explain to him the laws controlling his sentencing, and to advise him to accept a plea agreement rather than go to trial." ECF No. 668, at 8. The supplemental memorandum also provided additional briefing on the Johnson II issue.

The court will first address the issues which can be determined as a matter of law, including the Johnson II claim, before identifying those issues which require an evidentiary hearing.

## I.

On April 19, 2012, a federal grand jury sitting in Harrisonburg, Virginia, charged Britton and multiple codefendants with conspiring to distribute and possess with intent to distribute 280 grams or more of a mixture or substance containing cocaine base ("crack cocaine") and nine separate counts of crack cocaine distribution, in violation of 21 U.S.C. §§ 846, 841(a) and 841(b)(1)(A). On May 23, 2012, the U.S. Attorney filed an information pursuant to 21 U.S.C. § 851(a)(1) notifying Britton that he was subject to mandatory life in prison based on his prior felony drug offenses in Florida. Following trial, a jury found Britton guilty of the crack cocaine conspiracy charge and eight counts of crack cocaine distribution.[2] Britton was sentenced on April 17, 2013. As required by the statutory enhancement, the criminal judgment entered on April 18, 2013 sentenced Britton to mandatory life in prison on the conspiracy charge and 360 months on each of the distribution charges, all to run concurrently. Britton filed a timely appeal, which the Fourth Circuit Court of Appeals denied on February 4, 2014. The Supreme Court denied certiorari on June 2, 2014. On March 26, 2015, Britton timely filed his § 2255 petition.

## II.

---

[2] The jury returned a not guilty verdict on one of the distribution counts.

To state a viable claim for relief under § 2255, a petitioner must prove: (1) that his sentence was "imposed in violation of the Constitution or laws of the United States;" (2) that "the court was without jurisdiction to impose such a sentence;" or (3) that "the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Britton bears the burden of proving grounds for a collateral attack by a preponderance of the evidence. Jacobs v. United States, 350 F.2d 571, 574 (4th Cir. 1965).

### A. INEFFECTIVE ASSISTANCE OF COUNSEL

Criminal defendants have a Sixth Amendment right to effective legal assistance. Strickland v. Washington, 466 U.S. 668, 687 (1984). The proper vehicle for a defendant to raise an ineffective assistance of counsel claim is by filing a § 2255 motion. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010). However, ineffective assistance claims are not lightly granted; "[t]he benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the [proceeding] cannot be relied on as having produced a just result." Strickland, 466 U.S. at 686. Accordingly, in order to establish a viable claim of ineffective assistance of counsel, a defendant must satisfy a two-prong analysis showing both that counsel's performance fell below an objective standard of reasonableness and establishing prejudice due to counsel's alleged deficient performance. Strickland, 466 U.S. at 687. When considering the reasonableness prong of Strickland, courts apply a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689; see also Gray v. Branker, 529 F.3d 220, 228-29 (4th Cir. 2008). Counsel's performance is judged "on the facts of the particular case," and assessed "from counsel's perspective at the time." Id.

3

To satisfy the prejudice prong of Strickland, a defendant must show that there is a reasonable probability that, but for counsel's unprofessional error, the outcome of the proceeding would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.

### 1. Strickland Claim Regarding Career Offender Status.

Britton first claims that his counsel provided deficient representation because counsel inaccurately advised him that he would be considered a career offender under § 4B1.1(a) of the United States Sentencing Guidelines. Britton claims that had his counsel advised him that he would not be considered a career offender, he would have pled guilty and not risked a jury trial. For many reasons, Britton's claim fails.

When it was written in 2013, Britton's Presentence Investigation Report ("PSR") was correct in its conclusion that Britton met the requirements of a career offender. As reflected in paragraphs 40 and 43 of the PSR, Britton had qualifying Florida felony convictions of robbery in 2005 and sale of cocaine in 2008. At that time, Johnson II had not yet been decided, and the residual clause of the career offender guideline had not yet been subject to a vagueness challenge.

Nonetheless, Britton's petition raises two challenges to the application of the career offender guideline to his case. First, Britton asserts that as the cocaine convictions referenced in his § 851 notice were for possession, they do not qualify as controlled substance offenses under the career offender guideline. To be sure, a conviction for mere possession of a controlled substance does not qualify as a controlled substance offense for the purposes of the career offender guideline. Section 4B1.2 of the guidelines requires at least a conviction for possession with the intent to distribute. While the § 851 notice of prior conviction filed in Britton's case on

4

May 23, 2012 included indictments for three of Britton's prior drug felonies, those offenses were for cocaine possession and transportation of drug paraphernalia, and not distribution. ECF No. 97. Thus, Britton argues, his lawyer incorrectly advised him that he was subject to the career offender guideline.

Britton's argument misses the mark. His argument ignores the fact that in addition to the cocaine possession and transportation of drug paraphernalia convictions referenced in the § 851 notice and paragraphs 41 and 45 of the PSR, Britton had also been convicted in Florida state court of two counts of sale of cocaine on December 17, 2008 as reflected in paragraph 43 of the PSR. While the cocaine possession convictions referenced in the 851 notice and paragraphs 41 and 45 of the PSR do not qualify as controlled substance offenses for the purpose of the career offender guideline in § 4B1.1, the ¶ 43 cocaine sale convictions plainly do qualify.[3]

Britton's second argument rests on the Supreme Court's 2015 decision in Johnson II, which found the residual clause of the Armed Career Criminal Act ("ACCA") to be unconstitutionally vague. Because the career offender guideline contains a residual clause similar to that found in the ACCA, Britton argues his lawyer was ineffective for not recognizing the vagueness inherent in the career offender guideline and advising him of it.

This argument concerns Britton's 2005 Florida robbery conviction, in violation of Florida Statute § 812.13(1). Because the Florida robbery statute may be violated through the use of any degree of force, Andre v. State, 431 So.2d 1042 (Fla. 1983), it cannot meet the definition of a crime of violence under the force clause of § 4B1.2(a)(1). See Johnson I, 559 U.S. at 136, 140 (restricting the application of the force clause of the ACCA to "violent force" – that is "strong

---

[3] As reflected in paragraph 43 of the PSR, Britton was convicted of two counts of Sale of Cocaine on December 17, 2008. Under §§ 4B1.2 and 4A1.2(a)(2), because each of Britton's Sale of Cocaine convictions were imposed on the same day, they are counted together as one controlled substance offense for the purposes of § 4B1.1. Thus, Britton was considered to be a career offender based on (1) his February 10, 2005 robbery conviction reflected in paragraph 40 of the PSR and (2) his December 17, 2008 sale of cocaine convictions reflected in paragraph 43 of the PSR.

5

physical force," which is capable of causing physical pain or injury to another person."); see also United States v. Gardner, 823 F.3d 793 (4th Cir. 2016)(concerning the North Carolina robbery statute); United States v. Winston, No. 16-7252 (4th Cir. March 13, 2017)(concerning the Virginia robbery statute). Thus, robbery under Florida law could only be a crime a violence under the residual clause then found in U.S.S.G § 4B1.2(a)(2)'s residual clause.[4] And until Johnson II declared the residual clause in the ACCA unconstitutional in 2015, no argument could be raised that a violation of the Florida robbery statute was improperly categorized as a crime of violence for the purposes of the career offender guideline.[5] Thus, at the time he was sentenced in 2013, the Florida robbery statute fell under the then operative residual clause of § 4B1.2(a)(2), and constituted Britton's second qualifying conviction.

As such, there is no question that at the time of his trial in this case in October, 2012 and sentencing in April, 2013, that Britton was properly classified as a career offender based on his prior Florida felony convictions for sale of cocaine in 2008 and robbery in 2005. Accordingly, Britton's claim for ineffective assistance of counsel for not objecting to the application of the career offender guideline rings hollow as such application was appropriate at the time.

At best, Britton's claim of ineffective assistance of counsel regarding the career offender guideline devolves to a claim that his trial counsel was ineffective for failing to predict, at the time of Britton's trial in 2012, that the Supreme Court would declare the residual clause of the ACCA unconstitutional in 2015 and that such ruling would apply to his counsel's assessment that Britton met the career offender guideline. Counsel is not ineffective for applying the law as it exists and for failing to predict unforeseen changes in the law. This is particularly true here

---

[4] This guideline section was amended in 2016 to remove the residual clause.
[5] In fact, at the time Britton was sentenced in 2013, the Supreme Court was "not persuaded . . . that the residual clause is unconstitutionally vague." James v. United States, 550 U.S. 192, 210 n.6 (2007). James, of course, was abrogated by Johnson II.

6

where Britton's prosecution was contemporaneous with that of the defendant in Johnson II,[6] and the ruling in Johnson II did not come down from the Court until years after Britton had been tried, sentenced and had his appeal rejected.

This is not a case where the attorney's advice regarding the career offender guideline was rendered while the case was pending at the Supreme Court, giving rise to the claim that counsel should have apprised Britton of its pendency and its implication for his case. Because the decision in Johnson II came more than two years after Britton was tried and sentenced, there can be no actionable claim that Britton's trial counsel was constitutionally ineffective by not predicting a change in the governing law years down the road. "[T]he case law is clear that an attorney's assistance is not rendered ineffective because he failed to anticipate a new rule of law." Kornahrens v. Evatt, 66 F.3d 1350, 1360 (4th Cir. 1995).

Even were the court to set aside the fact that Britton was sentenced two years before Johnson II was decided, Britton has no claim for two additional reasons. First, the Supreme Court recently held in Beckles v. United States, No. 15-8544 ___ U.S. ___ (March 6, 2017), that unlike the ACCA, the career offender guideline's residual clause is not subject to a vagueness challenge under the Due Process Clause. Second, Britton gets no retroactive benefit from Johnson II because the determination in his PSR that he was a career offender had no impact on his sentence. Although the PSR calculated Britton's sentencing guidelines, he was not given a guidelines sentence. Rather, because he had two prior felony drug offenses as defined in 21

---

[6] In fact, the prosecutions of Britton and Samuel Johnson, the defendant in Johnson, are relatively contemporaneous. Johnson was charged on April 16, 2012, three days before Britton. While Britton proceeded to trial, Johnson pled guilty and was sentenced on September 5, 2012. When Britton was sentenced in April 2013, Johnson's appeal was pending before the Eighth Circuit Court of Appeals, which affirmed his conviction on July 31, 2013. It was not until June 26, 2015, nearly two years later, that the Supreme Court reversed the Eighth Circuit, holding the residual clause of the Armed Career Criminal Act, 18 U.S.C. § 924(e)(2)(B)(ii), to be unconstitutionally vague. On April 18, 2016, the Supreme Court in Welch v. United States, 136 S. Ct. 1257 (2016), held Johnson II to be retroactive.

7

U.S.C. § 802(44), Britton was required by statute to be sentenced to "a mandatory term of life imprisonment without release." 18 U.S.C. § 841(b)(1)(A).

## 2. Claim for Counsel's Advice Regarding Plea Agreement.

In Claim Two of his pro se filing, Britton asserts that trial counsel failed to counsel him to accept the government's plea agreement given the overwhelming evidence against him and the filing of the § 851 enhancement. Britton repeats his argument that his trial counsel misadvised him that he was a career offender and that he lacked knowledge of the plea agreement.

The plea agreement offered to Britton benefitted him by waiving the § 851 notice as to his December 17, 2008 possession of cocaine conviction, eliminating the mandatory life sentence. Proposed Plea Agreement, ECF No. 611-2, at 29-30. In return, among other things, Britton was required to "cooperate fully with law enforcement agents and will disclose to them, at any time requested by them, my knowledge of any criminal activity. I agree I will testify truthfully. I hereby waive any right I may have to refuse to answer any questions. I agree to be debriefed by law enforcement agents concerning any matter." Id. at 35. In contrast to the requirements of the plea agreement, Britton stated in this affidavit that "I clearly explained to him [his counsel] that I did not wish to co-operate against my codefendants, but I would consider pleading guilty, which he seemed disappointed by my decision not to cooperate." Affidavit of Alfanco D. Britton, ECF No. 583-2, at ¶ 2. Consistently, Britton's trial counsel testified that "the stumbling block from the very beginning in this case, as I mentioned before, it is the cooperation part that was a non-starter." Deposition of Wynn Andrew Harding, ECF No. 611-1, at 32.

In short, despite the benefit provided by the proposed plea agreement of avoiding a mandatory life sentence, it appears that Britton refused to consider the plea agreement offered by the government because it required him to cooperate with the prosecution of his girlfriend, Nikki

Williams, her son, Antonio Williams and the other codefendants. Britton notes that his counsel "seemed disappointed by my decision not to cooperate." Having made the choice himself to reject the plea agreement because it required him to cooperate with the government, it is difficult to see how Britton can now seek to blame his refusal to accept the plea agreement on any claimed failure on the part of his counsel to explain its terms. To be sure, given the mandatory life sentence Britton is now serving, the provision in the plea agreement waiving reliance on the conviction for a second felony drug offense looks very attractive. However, acceptance of the plea agreement would have required Britton to cooperate with the government, which he apparently refused to do.

Regardless, the court is going to take Claim Two of Britton's pro se petition under advisement pending the holding of an evidentiary hearing. At such hearing, the court expects to hear evidence as to counsel's communication with Britton regarding the proposed the plea agreement.

### 3. Claim for Failing to Secure a Competency Evaluation.

In Claim Three of his pro se petition, Britton asserts that his counsel failed to request and obtain a competency evaluation for him given his lack of education, understanding and reading ability/comprehension. Britton cites his repeated failure to pass the Florida driver's license examination and school records indicating that he was classified as an exceptional student with intellectual disability. In contrast to Britton's claim, trial counsel indicated that his engagement and communications with Britton did not suggest that he was incompetent to stand trial.

Although trial counsel did not believe that Britton's intellectual capabilities fell to the level requiring a competency evaluation, the court nonetheless had the opportunity to assess Britton's understanding of legal proceedings in several ways in this case. Based on the court's

9

multiple opportunities to assess Britton's competency, there is no merit to his contention that his counsel was ineffective for not seeking a competency evaluation.

First, Britton argued that his videotaped confession in this case was not admissible because of his diminished intellectual aptitude. In furtherance of his suppression motion, Britton sought appointment of an expert to evaluate his verbal and math skills. Motion to Appoint Expert, ECF No. 158. The court approved Britton's request, Order, ECF No. 169, and an educational evaluation was completed, indicating that Britton's academic skills were well below his age expectations. Educational Evaluation, ECF No. 215. The court conducted an evidentiary hearing on Britton's suppression motion on September 25, 2012, a month prior to the trial. In preparation for the evidentiary hearing, the court listened to the audio recording of an interview between the case agent and Britton taken in February, 2012. After listening to the audio recording and considering the evidence presented at the suppression hearing, the court found that there could be no credible argument that Britton's statement to the investigator was involuntary or coerced. Order, ECF No. 273, at 1-2. Further, the court rejected Britton's argument that his interview be suppressed because of his diminished capacity. In an Order entered on October 22, 2012, the court wrote:

> Second, Britton argues that he suffers from diminished capacity as evidenced by low test scores on certain tests taken in Florida in 2009. (Dkt. #216). While these test scores are indeed low, it is clear to the court from both the recording and the evidence from the case agent at the evidentiary hearing that Britton is street smart and does not suffer from a lack of capacity rendering his Miranda waiver void due to any lack of knowledge or intelligence. Throughout the audio recording of his statement, Britton displays an understanding of his circumstances that is manifest. In addition, the case agent testified that in earlier encounters with Britton, Britton told him that he would only waive his Miranda rights if the government had evidence involving him on tape and that if no tape existed, Britton would not do so. Britton plainly had a working knowledge of his rights, his circumstances and his place in the

> functioning of the criminal justice system. Under these circumstances, although Britton's test scores are low, his interactions with the agent make it clear that his Miranda rights were knowingly and voluntarily waived. See United States v. Robinson, 404 F.3d 850, 861 (4th Cir. 2005); United States v. Rosario-Diaz, 202 F.3d 54, 69 (4th Cir. 2000). Moreover, Britton's long experience with the criminal justice system reinforces this conclusion. Poyner v. Murray, 964 F.2d 1401, 1413 (4th Cir. 1992).

Order, ECF No. 273, at 2-3.

Second, Britton objected to the government's § 851 notices concerning his two prior Florida felony drug offense convictions, contending that his guilty pleas in those state proceedings were not knowing and voluntary. Prior to sentencing, the court reviewed an audio recording from Britton's September 6, 2007 guilty plea hearing and a video recording from his December 17, 2008 guilty plea hearing to felony drug offenses. Sentencing Transcript, ECF No. 504, at 3-4. At sentencing, Britton testified regarding his educational difficulties and the conduct of the Florida state court guilty plea hearings. Id. at 9-19. After considering the evidence, the court concluded that Britton's guilty pleas to the prior Florida felony drug offenses were knowing, voluntary and intelligent.

> We have in this case a clearly conducted plea colloquy in which Mr. Britton expresses no hesitation, no misunderstanding, no confusion. He knows exactly what he's doing. He knows exactly the plea bargain he's getting. He knows exactly what he's giving up and he knows exactly what he's getting and that was clear to me today, even from the witness stand. He may not be able to read as clearly as counsel, but his counsel certified on -- and it is in this record, that not only did Mr. Britton initial these and sign it, that counsel explained those rights to him.
>
> Under the case law, this use of this waiver form, under the totality of the circumstances, is plainly sufficient to establish the constitutionality of the prior guilty pleas. There was detailed colloquy between the Court. Mr. Britton was clear and direct in his responses. Counsel was there, certified that he went over all of these rights with him. The judge asked about the rights. The judge

11

> asked specifically about the right to jury trial. Mr. Britton signed the waiver. There was no evidence of coercion, force or threats. He asked that question. He said there wasn't any. Said there wasn't any other side deals except the plea agreement.
>
> These guilty pleas, in Florida, were knowing and voluntary and intelligent and he waived these rights and he pled guilty and he knew – even from today's testimony, me sitting two yards from him, he is street smart, he is savvy and he knows exactly what he was doing in Florida and exactly what he was giving up.
>
> \* \* \* \* \*
>
> What happened in Florida, based on the totality of the circumstances, based on my knowledge and understanding of Alfanco Britton, seeing him not only in this courtroom testifying today, listening to his conversation with the case agent that was subject of the suppression hearing last year, seeing the evidence that I saw at the trial of this case, Mr. Britton, his plea – and given the fact that the attorney certified that he went over these rights with him and given the totality of the judge's direct inquiries and Mr. Britton's clear responses, Mr. Britton's indication he understood English, he understood what he was getting and his testimony here today, that he plainly knew what he was he was doing at his guilty plea, the Court finds that these – that the defendant has not met his burden of demonstrating that the convictions in Florida that are subject to the 851enhancement were unconstitutional. I find that they were, from the totality of circumstances knowing and voluntary and intelligently waived his rights. He pled guilty. He knew exactly what he was doing. He had the advice of counsel and on these waiver forms, he waived his rights. So, the Court rejects the argument that the 851 enhancement is improper.

Id. at 27-28, 30. Britton raised this issue on appeal, and the Fourth Circuit Court of Appeals affirmed the judgment, finding that "[o]n this record, the district court did not err in finding that Britton's pleas were knowing and voluntary." Per Curiam Opinion, ECF No. 558, at 10.

The court had multiple opportunities to evaluate Britton's competency, and the court concluded, consistent with defense counsel's evaluation, that there was no issue as regards Britton's competency to stand trial. Plainly, Britton had a sufficient present ability to consult

12

with his lawyer with a reasonable degree of rational understanding and had a rational and factual understanding of the proceedings against him. Dusky v. United States, 362 U.S. 402 (1960). Accordingly, there is no merit under Strickland that his counsel was ineffective for not requesting a competency evaluation or that he was prejudiced thereby.

### 4. Claim for Failing to Object to Imposition of $900 in Mandatory Special Assessments.

On Claim Four of his pro se petition, Britton asserts that counsel was ineffective for not objecting to the $100.00 mandatory special assessment he was assessed for each count of conviction. Britton was assessed $100.00 for the conviction on Count One, Conspiracy to Distribute 280 Grams or More of Cocaine Base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(A), and $100.00 on eight separate counts of Distribution of Cocaine Base in violation of 21 U.S.C. § 841(a)(1). Britton claims that the court may not impose the nine separate special assessments totaling $900.00 under the Supreme Court precedent in Rutledge v. United States, 517 U.S. 292 (1996), and Whalen v. United States, 445 U.S. 684 (1980). At issue in Rutledge was whether the defendant was properly sentenced to concurrent life terms for one count of participating in a conspiracy to distribute controlled substances in violation of 21 U.S.C. § 846 and one count of conducting a continuing criminal enterprise in concert with others in violation of 21 U.S.C. § 848. Concluding that a guilty verdict on a § 848 charge necessarily includes a finding that the defendant also participated in a conspiracy violative of § 846, the Court found the drug conspiracy charge to be a lesser included offense of the continuing criminal enterprise charge. The Court found the concurrent sentences, and mandatory special assessments associated therewith, to be cumulative punishment not authorized by Congress. In Whalen, the Court likewise found that Congress did not authorize consecutive sentences for rape and for a killing committed in the course of rape, applying the rule of statutory construction set out in

13

Blockburger v. United States, 284 U.S. 299, 304 (1932)("The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision requires proof of a fact which the other does not.").

The holdings in Rutledge and Whalen are inapplicable to the circumstance of Britton's nine convictions, each of which stand alone. Each of Britton's conspiracy and separately dated distribution convictions "requires proof of a fact which the other does not." Blockburger, 284 U.S. at 304. As such, none of the counts of conviction are lesser included offenses of each other, require proof of different facts and, as such, may be punished separately. Further, Britton may be convicted both of conspiracy to distribute crack cocaine and distribution of crack cocaine, as "conspiracy is a distinct offense from the completed object of the conspiracy." Garrett v. United States, 471 U.S. 773, 778 (1985). This is because "the agreement to do the act is distinct from the act itself." United States v. Bayer, 331 U.S. 532, 542 (1947). Accordingly, the Double Jeopardy Clause of the Fifth Amendment does not bar separate punishment for the substantive offense of distribution of cocaine base and conspiracy to commit that offense. United States v. Yearwood, 518 F.3d 220, 227-28 (2008)("The two offenses here are not the same. A substantive crime and conspiracy to commit that crime are 'separate offenses' for purposes of the Double Jeopardy clause, even if they are based on the same underlying incidents."). Accordingly, Britton's claim of ineffective assistance of counsel for failing to object to the imposition of a $100.00 mandatory special assessment for each of his nine separate convictions is meritless.

### 5. Claim for Failing to Object to Sentencing Guidelines Enhancement for Obstruction of Justice.

Britton next claims that his counsel was ineffective for failing to object to the two point

enhancement for attempting to impede or obstruct the administration of justice under U.S.S.G. § 3C1.1. The PSR assigned these two points based on Britton's actions in attempting to grab a video wire on a confidential informant as set forth in paragraph 16 of the PSR and threatening a codefendant that he would see him on the streets as set forth in paragraph 19 of the PSR. Britton's argument is unavailing for two reasons.

First, as reflected in the Addendum to the PSR, Britton's counsel did, in fact, object to paragraph 30 of the PSR, recommending the two point enhancement for obstruction. ECF No. 486, at 22. This objection caused the probation officer to revise the PSR to remove any reference to testimony that Britton used a gun-like hand motion at the time he made his jail comment about seeing the codefendant on the streets. At the sentencing hearing, the court noted counsel's successful objection resulting in the removal of any reference to a hand motion in the PSR. ECF No. 611-9, at 54-55. Even with the change resulting from counsel's successful objection, the court found the obstruction enhancement to be appropriate. Id. at 55. Although Britton argues that counsel was ineffective for failing to renew this objection at sentencing, the court disagrees.

Second, Britton suffered no prejudice as a result of the claimed failure to reassert the objection to the obstruction enhancement. Britton was sentenced to a mandatory term of life imprisonment as required by 21 U.S.C. § 841(b)(1)(A) and was not sentenced based on the guidelines. As such, the obstruction enhancement had no impact on Britton's sentence, and he suffered no prejudice thereby.

### 6. Claim for Failing to Request a Jury Instruction on Mere Buyer-Seller Relationship.

The last claim raised in Britton's pro se motion was that his lawyer was ineffective for failing to request a buyer-seller jury instruction. The absence of such an instruction in this case

15

did not prejudice Britton as the evidence of Britton's involvement in an agreement to distribute large quantities of crack cocaine over a long period of time was overwhelming.

First, evidence of a buyer-seller relationship "is at least relevant (i.e. probative) on the issue of whether a conspiratorial relationship exists." Yearwood, 518 F.3d at 226. As the Fourth Circuit stated in United States v. Mills, 995 F.2d 480, 485 n.1 (4th Cir. 1993), "evidence of a buy-sell transaction . . . coupled with a substantial quantity of drugs, would support a reasonable inference that the parties were coconspirators." "Likewise, evidence of continuing relationships and repeated transactions can support the finding that there was a conspiracy, especially when coupled with substantial quantities of drugs." United States v. Reid, 523 F.3d 310, 317 (4th Cir. 2008)(citing United States v. Burgos, 94 F.3d 849, 858 (4th Cir. 1996).

In this case, witness after witness testified to Britton's involvement in dealing crack cocaine in Winchester, including many controlled purchases. The evidence is more than sufficient to support the finding that Britton entered into an agreement to deal drugs with multiple persons. Many witnesses, including both law enforcement agents and confidential informants, testified as to multiple purchases of crack cocaine from Britton at many locations around Winchester, including various motel rooms, apartments and other places during the 2010 to 2012 period. Detective Matthew Bielecki testified as to the many controlled purchases made from Britton and Antonio Williams and the execution of a search warrant at an apartment where Britton was staying where buy money used in controlled purchases was found. Trial Transcript, ECF No. 442, at 92. Mike Simmons estimated that he bought crack cocaine from Britton "a lot. I'd say probably a hundred times. I mean, it was a lot of times. Pretty much every day for a while." Trial Transcript, ECF No. 443 at 277. Tonya Lackovitch, working as a confidential informant, testified as to a table top covered with crack cocaine at a hotel in Winchester where

she made a purchase from Britton. Trial Transcript, ECF No. 443, at 194-98. On another occasion, Lackovitch testified that she called Britton about purchasing a half ounce of crack cocaine for $600.00. When she arrived at the trailer then being used by Britton, both Nikki and Antonio Williams were also present. Contrary to what Britton had told her, he now claimed not to have the full half ounce. When she protested the quantity, Britton reached out to Nikki and Antonio Williams to make the weight, and Nikki responded by nodding "no, it's not going to happen." Trial Transcript, ECF No. 443 at 211. Jason Guadiane testified that he and many others bought crack cocaine from Britton at Mike Jones' Apartment 101 from late 2010 to early 2011. The extent of Britton's business at this location was such that "you could see somebody coming in or out any time of the day or night." Trial Transcript, ECF No. 444, at 135. Guadiane described the foot traffic to the apartment during the winter of 2010-2011 as a trampled path in the snow. Id. at 165. Guadiane testified that Antonio Williams also sold crack there. Id. at 139. Guadiane only saw Nikki Williams there twice, and testified that she was "not involved with any crack transactions or anything like that." Id. at 141. Guadiane's "understanding from what [he] saw was she just held money." Id.

Given the breadth of the evidence concerning the scope and duration of this conspiracy, and particularly the continuing relationships and repeated transactions described by multiple witnesses, no reasonable juror could have concluded that Britton's role was as a mere buyer or seller of crack cocaine. As such, the failure to request an instruction in this regard did not prejudice Britton. See United States v. Lampkin, 562 Fed. Appx. 157, 160 (4th Cir. Mar. 26, 2014)("We conclude that there was no error [to deny a buyer-seller instruction] because there was evidence that the relationship between Lampkin and his supplier went beyond a mere drug transaction."); United States v. Cannon, 1998 WL 801466, *1 (4th Cir. November 18,

17

1998)("Such a buyer-seller instruction need not be given when the evidence shows that the defendant's relationship with his codefendants went further than a simple buy-sell transaction.") United States v. Grover, 1996 WL 226262, *11 (4th Cir. May 6, 1996)(No error to refuse buyer-seller instruction where the evidence showed defendant involved with distributable quantities of drugs on a regular basis); Bennett v. United States, 2013 WL 2423993, *3 (D.S.C. June 4, 2013)(Counsel not ineffective for failure to offer mere buyer/seller instruction in light of extensive evidence of defendant's involvement "in numerous transactions of buying and selling cocaine, transporting cocaine, and facilitating its distribution out of his home," falling well outside of a mere buyer/seller relationship); Robinson v. United States, 2012 WL 3782554, *9-10 (N.D.W.Va. July 10, 2012)(Counsel not ineffective for failing to offer a mere buyer/seller jury instruction unsupported by a foundation in the evidence); Brooks v. United States, 2011 WL 1043503, *2-4 (S.D.W.Va. March 18, 2011)(Counsel not ineffective for failing to offer buyer-seller instruction where trial record was replete with testimony of multiple drug transactions and direction of others); United States v. White, 2002 WL 32079464, *3 (D.S.C. August 6, 2002)(Counsel not ineffective for failing to request buy-sell instruction "when the evidence shows that the defendant's relationship with his codefendants went further than a simple buy-sell transaction. . . . The record reflects that Movant was involved in numerous transactions involving drug amounts far in excess of what reasonably could be considered for personal use. In the court's view no rational jury could have found that Movant possessed a mere buyer-seller relationship with his codefendants.").

**III.**

Both Claim Two of Britton's pro se petition and certain claims raised in Britton's counseled supplemental memorandum require an evidentiary hearing. Those claims concern the following four areas:

1. Counsel's communication and advice regarding the government's proposed plea agreement;
2. Counsel's communication with Britton regarding discovery and advice regarding the strength of the government's case;
3. Counsel's strategic considerations regarding the opening statement;
4. Counsel's communications with Britton regarding the enhanced mandatory life sentence.

### IV.

There is no legal merit, much less a factual issue, regarding the bulk of Britton's pro se claims, including his Johnson II claim concerning his lawyer's advice regarding the career offender guideline. For the reasons set forth above, those claims will be dismissed.

As to Britton's four remaining claims, summarized in section III of this memorandum opinion, the Clerk is directed to schedule an evidentiary hearing.

An appropriate Order will be entered.

**ENTER:** This 19 day of April, 2017.

/s/ Michael F. Urbanski
_____
United States District Judge